## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DANIEL BOYD,                          )
                                      )
    Plaintiff,    )
                                      )
    v.             )      No. 4:21-cv-00417-DGK
                                      )
LOWE'S COMPANIES, INC., et al.,       )
                                      )
    Defendants.    )

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case. Plaintiff Daniel Boyd allegedly worked for Defendants Lowe's Companies, Inc. ("Lowe's Companies") as well as Lowe's Home Centers, LLC ("Lowe's Home") as a delivery driver. Plaintiff alleges that Defendants took adverse employment actions against him due to his religion, age, and disability. Plaintiff filed an eight-count lawsuit against them in the Circuit Court of Jackson County, Missouri, asserting claims under the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055, *et seq.*, and the Missouri Service Letter Law, Mo. Rev. Stat. § 290.140. Defendants removed. ECF No. 1.

Defendants now seek summary judgment on all claims. ECF No. 58. Finding that there are no genuine issues as to any material facts and that Defendants are entitled to judgment as a matter of law, the motion is GRANTED.

## Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving parties, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit

under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986).

To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations "with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations omitted). Contrary to Plaintiff's repeated intimations, there is "no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). No matter the type of case, "[w]here the record taken as a whole could not lead a trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 1042.

### Undisputed Material Facts[1]

On April 3, 2017, Plaintiff began working as a delivery driver for Lowe's Home at its Independence, Missouri location. At the time of his hiring, Plaintiff was 39 years old. Over the

[1] The Court excluded asserted facts properly controverted by the parties, immaterial facts, facts not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. The Court included facts that were not genuinely disputed by any evidence under Federal Rule of Civil Procedure 56(c)(1). Most of the facts stated in this section are taken verbatim from the parties' uncontroverted statement of facts, while others are direct quotes or summaries from undisputed documents and deposition testimony.

course of his time with Lowe's Home, each of Plaintiff's W-2 forms listed Lowe's Home as his employer. During his tenure with Lowe's Home, Plaintiff only worked as a delivery driver.

Plaintiff is a Christian, and attending church is a major part of his life. Plaintiff attends services on Sundays and was involved in his church's Sunday School throughout the relevant time period. When Plaintiff started working for Lowe's Home, he was allegedly told by a Human Resources employee that he would not have to work on Sundays. But it is undisputed that Plaintiff's religious beliefs do not prohibit him from working on Sundays altogether.

Plaintiff had numerous direct and indirect supervisors and managers during his time with Lowe's Home. Throughout Plaintiff's employment, Ray Epps was an Assistant Store Manager. Around May 2019, Breann Rogers was promoted to Department Supervisor and began managing all delivery drivers. In this capacity, Ms. Rogers was Plaintiff's direct supervisor. In 2019, Edwin Rathburn was the Interim Store Manager. Ms. Rogers and Mr. Rathburn are also Christians, and they attend church.

In the latter half of 2017,[2] Plaintiff informed his managers "Mark and Shawn"[3] that he would not come to work after they asked him to do so. This, according to Plaintiff, was a request for a reasonable accommodation. Plaintiff was scheduled to work some Sundays after this, and he was "threatened" with losing his job if he did not work those Sundays. Plaintiff worked on at least four or five Sundays between 2017 and 2019, and there is no evidence that he did not work any Sunday shifts that were scheduled or that he was disciplined for failing to work a Sunday shift when scheduled to do so.

---

[2] Defendants argue that much of allegedly discriminatory conduct that Plaintiff cites is time-barred, as it occurred more than 180 days before his charge of discrimination. The Court assumes, without deciding, that the alleged discriminatory actions cited by Plaintiff are not time-barred, so it lists them here. As shown below, however, even assuming that the actions were not time-barred, Plaintiff still cannot survive summary judgment.

[3] Plaintiff does not provide any last names for these managers or any records to corroborate that he, in fact, had these supervisors. Defendants also dispute that these managers existed.

Plaintiff alleges a variety of actions and statements made by his supervisors in 2019 but, for much of the conduct and statements, Plaintiff fails to provide the exact date for when they occurred. Despite Plaintiff's lack of specificity and clarity on dates, the Court endeavors to piece together the sequence of events as best it can tell from Plaintiff's proposed statement of facts.

At some point after Ms. Rogers became Plaintiff's direct supervisor in May 2019, she informed him that he would have to work at least one weekend per month. According to Plaintiff, Ms. Rogers also informed him that he could be demoted to part time or fired if he did not work on Sundays. Ms. Rogers also said that while in the past they had sufficient coverage to allow Plaintiff to not work Sundays, they had staffing shortages that required him to work Sundays. Along these same lines, in September 2019, Mr. Rathburn emailed Ms. Rogers and Mr. Epps to have them "make sure we have drivers that will show up for weekend shifts." Notice of Filing, Ex. 26, ECF No. 66-1.

According to one of Plaintiff's co-workers, Ms. Allison Hanko, Ms. Rogers did not assign people to help Plaintiff load his flatbed truck—but did for other drivers—and "slandered" him while he was not working. At some unspecified point or points, Ms. Rogers told Plaintiff that "if you worked Sundays, this wouldn't happen." Sugg'n in Opp'n, Ex. 1, ECF No. 64-1 at 148:12-15. Around mid-2019, Plaintiff was reassigned to be a "ride-along" delivery employee and no longer drove a flatbed truck. Plaintiff provides no evidence that this move changed his hours, general responsibilities, or pay. Plaintiff's replacement on driving the flatbed truck was a 33-year-old delivery driver who is not religious.

Plaintiff claims that other actions were taken against him at other unspecified times in 2019. Not only is it unclear when these actions occurred, but also who took the alleged actions against him. On one occasion, Plaintiff had hours allegedly removed from his time records by a

"manager," and those hours were later added back by another "manager." On other occasions, Plaintiff's "paperwork" that was provided to management went missing or ended up in the trash.

In July 2019, Plaintiff made a written religious accommodation request. In that written request, Plaintiff asked either to not work Sundays or to only work between scheduled religious services on Sunday. After making this request, Plaintiff filed a religious discrimination complaint with Human Resources that outlined some of the conduct and statements noted above. Around this same time, Ms. Rogers was instructed not to schedule Plaintiff to work on Sundays until his accommodation had been finalized. At some point after this, Ms. Rogers allegedly told Plaintiff "to not forget about Sunday" when he asked her a question. Notice of Filing, Ex. 17, ECF No. 65-7. In mid-August 2019, Ms. Rogers told Plaintiff she needed him to work the next day, but when he arrived the next day, she told him to go home.

At some point after making his written accommodation request, Plaintiff was called to the manager's office to discuss the issue. During this discussion, Mr. Rathbun asked Plaintiff why he was requesting Sundays off. Plaintiff told him it was to attend church. Mr. Rathbun then allegedly told him that he would not have hired him if he knew that, and Plaintiff responded that Mr. Rathbun was not the manager who hired him. Mr. Rathbun then allegedly said "money is more important," that he "miss[es] church all of the time," and "[missing church] shouldn't bother [Plaintiff]." Sugg'n in Opp'n, Ex. 1, ECF No. 64-1 at 114:10–14. On another occasion, Mr. Epps told Plaintiff "You're going to work Sundays or you're going to be terminated or put down to part time." *Id.* at 118:15–16.

In September 2019, there were various discussions between Plaintiff's supervisors and Human Resources about whether his accommodation request should be approved. At one point, Mr. Epps and Mr. Rathbun told Human Resources that they were not going to honor Plaintiff's

request. Despite this statement, Plaintiff's accommodation request was approved in October or November 2019. During the pendency of his accommodation request, Plaintiff made another religious discrimination complaint that outlined some of the conduct and statements mentioned above as well as alleged disparate treatment outlined below.

Between his filing of the written accommodation request in July 2019 and its approval, Plaintiff was only scheduled to work one Sunday during the hours Plaintiff said he was not in church. After the accommodation approval, Plaintiff never worked another Sunday. According to Plaintiff, when Mr. Rathburn informed him of the accommodation approval, he told Plaintiff that "if I had my choice, you would have never got Sundays off or [would have been] terminated." *Id.* at 118:22–24.

Many months later, on February 14, 2020, an incident arose involving Plaintiff and Ms. Rogers. On that date, Plaintiff arrived at work and began pulling orders to load a box truck, but Ms. Rogers told him that he was assigned to a flatbed truck that day. Plaintiff was supposed to attend a friend's funeral, so he had allegedly arranged with a co-worker to load the flatbed truck for him. Ms. Rogers apparently disagreed with this arrangement, and an argument ensued. Ms. Rogers told Plaintiff she would report him to Mr. Rathburn if he did not do as she said.

During the discussion, Plaintiff was in the process of loading a washer and dryer onto a box truck. Plaintiff admits that tensions were high and he testified that he was "irritated." *Id.* at 159:17, 192:13. But he offered to move the discussion into a manager's office. At some point during the parties' exchange, Plaintiff went to push the dryer he was loading and it fell to the ground. Plaintiff claims that Ms. Rogers accused him of throwing the dryer at her. After the dryer fell, Plaintiff was walking to the door and kicked his safety harness. Plaintiff claims he did so because the harness was about to trip him.

It is undisputed that Lowe's Home has a Workplace Safety policy that requires employees to "always take reasonable and appropriate steps to protect their own health and safety as well as the safety of others." Sugg'n in Supp., Ex. K, ECF No. 59-11. And a violation of this policy normally results in immediate discharge, although Plaintiff disputes whether other co-workers were not discharged for violating the policy.

On February 18, 2020, a Lowe's Home Retail Crime Manager, Audrey Kohler, met with Plaintiff at the Independence store. The parties dispute whether the discussion between them should be characterized as an "interview" or "interrogation," but is undisputed that they discussed the incident involving the dryer and safety harness on February 14, 2020. Plaintiff also admitted to Ms. Kohler that he had accepted tips from customers on over 50 occasions during his employment, and it is undisputed that this violated Lowe's Home's policy against doing so. Plaintiff also admitted to sitting in a delivery truck and not working while on the clock, but he claimed that he did so because the driver he was with parked the car and he could not do anything about it.

At the end of interview, Plaintiff wrote a statement admitting that the dryer and harness incident was anger-related and wrong. He also admitted to spending time in the delivery truck not working and taking tips from customers. Plaintiff states that Ms. Kohler "coerced" him into writing the statement by claiming he would keep his job if he did so, and that she told him what to say in the statement.

Following the interview, Ms. Kohler met with Stephen Wester, a Lowe's Home Human Resources Business Partner, to discuss the incident on February 14, 2020, and the subsequent discussion Ms. Kohler had with Plaintiff about it. Ms. Kohler informed Mr. Wester that Plaintiff had admitted to accepting and retaining tips, stealing time, and pushing the large appliance off a

platform and kicking his safety harness. The dryer and safety harness violated Lowe's Home's policy, and Ms. Kohler recommended that Plaintiff be terminated. Mr. Wester agreed.

When making this decision, Mr. Wester averred he was not aware of Plaintiff's religious identity or religious accommodation request. He further averred that both he and Ms. Kohler did not consider or discuss Plaintiff's religious identity, age, or disability status in making the termination decision. In fact, there is no evidence that Mr. Wester or Ms. Kohler had ever interacted with Plaintiff prior to the dryer and harness incident, or that they knew anything about him. Assistant Store Manager Davy Boudreau informed Plaintiff of his termination.[4] Plaintiff was 42 when he was terminated.

Following his termination, Plaintiff made a complaint with Human Resources. Plaintiff claimed that after his accommodation had been approved his supervisor would "verbally attack" him for not loading trucks or having tools or denied him requested time off that others approved. On April 7, 2020, Plaintiff sent a request for a service letter to the Independence store. On April 28, 2020, Lowe's Home issued a service letter. Lowe's Companies never provided one.

Plaintiff has presented evidence that some other delivery drivers had accepted tips but were not disciplined, had taken property and were not disciplined, that one driver had stolen time and was reported and not disciplined, and that one driver believed or heard some drivers may have committed various safety violations but were not disciplined. Within the twelve months

---

[4] Plaintiff attempts to dispute many of the statements in this paragraph as well as the previous one but falls well short of doing so. Plaintiff chose not to depose Mr. Wester, Ms. Kohler, or Mr. Boudreau—or, if he did so, he has not presented their testimony to the Court—but tries to dispute Mr. Wester's affidavit based on sheer speculation and conjecture regarding what they believed or thought during the decision-making process and who made the ultimate termination decision. But Plaintiff presents no probative evidence to support his theories. For example, he has not provided any evidence to undermine the testimony that Mr. Wester and Ms. Kohler believed that the dryer and harness incident violated Lowe's Home's policy. Nor has he presented any tangible evidence that Mr. Wester or Ms. Kohler had accessed Plaintiff's personnel file and were aware of his prior religious discrimination complaints and accommodation request. Moreover, there is no evidence that Davy Boudreau—rather than Mr. Wester and Ms. Kohler—made the decision to terminate Plaintiff instead of just conveying it. Plaintiff cannot engineer a material dispute based off sheer conjecture, especially when he had an extended discovery period to bolster his claims.

8

before his termination, Plaintiff had not received any corrective action reports and some co-workers have averred that he was "hard working."

**Procedural History**

On May 5, 2021, Plaintiff filed the instant case in the Circuit Court of Jackson County, Missouri against Defendants. The complaint raises eight claims, including various MHRA religion-based claims (Counts I-IV), an MHRA disability discrimination claim (Count V), an MHRA age discrimination claim (Count VI), an MHRA retaliation claim (Count VII), and a Missouri Service Letter Law violation claim (Count VIII). ECF No. 1-1. Defendants timely removed to this Court. ECF No. 1. The Court previously denied Plaintiff's motion to amend the complaint to add non-diverse defendants and to remand to state court. ECF No. 32.

**Discussion**

Defendants raise several bases for summary judgment. Lowe's Home argues that it is entitled to judgment as a matter of law on each claim. Defendant Lowe's Companies seeks summary judgment because it never employed Plaintiff. The Court addresses the merits of each claim against Lowe's Home before addressing Lowe's Companies' arguments.

## I. Lowe's Home is entitled to summary judgment on all claims.

Lowe's Home argues that it is entitled to summary judgment on all claims. Plaintiff's counter that there are material disputes on each claim. The Court addresses Plaintiff's various discrimination claims (Counts I, V, and VI), harassment and hostile work environment claims (Counts II and III), failure to accommodate claim (Count IV), and retaliation claim (Count VII).

### A. Lowe's Home is entitled to summary judgment on Plaintiff's religious, age, and disability discrimination claims.

Plaintiff alleges that Lowe's Home discriminated against him due to his religion, age, and disability. The MHRA makes it unlawful for an employer to terminate or discriminate against an

9

employee "because of" his religion, age, or disability. *See* Mo. Rev. Stat. § 213.055.1(1)(a). Plaintiff may prove his case through direct or circumstantial evidence. *See Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 832 (8th Cir. 2020). Direct evidence exists when a remark is made "by a decisionmaker and 'show[s] a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action.'" *Id.* (quoting *Torgerson*, 643 F.3d at 1045–46).

To analyze a case based on circumstantial evidence, Missouri employs the familiar *McDonnell Douglas* burden-shifting framework. Mo. Rev. Stat. § 213.101.3. In so doing, Missouri relies upon the *McDonnell Douglas* case itself and subsequent federal cases applying it. *Id.* (noting that when presented with a summary judgment motion, "the court shall consider the burden-shifting analysis of [*McDonnell Douglas*], and its progeny to be *highly persuasive* for analysis in cases not involving direct evidence of discrimination." (emphasis added)); *see also Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1019 (8th Cir. 2019) ("Missouri courts follow federal law so long as it is consistent with Missouri law.").

The *McDonnell Douglas* framework involves three steps. First, Plaintiff must establish his prima facie discrimination case. *Kosmicki v. Burlington N. & Santa Fe R. Co.*, 545 F.3d 649, 651 (8th Cir. 2008). Second, if Plaintiff does so, the burden shifts to Defendants to "articulate a legitimate, nondiscriminatory reason for the discharge." *Kosmicki*, 545 F.3d at 651. Third, if Defendants "present[] such evidence, the burden shifts back to the employee to produce evidence that the employer's stated reasons are a pretext for discrimination." *Id.*

Lowe's Home argues that it is entitled to summary judgment on each claim because Plaintiff has not presented sufficient direct or circumstantial evidence. Plaintiff counters that he has presented sufficient amounts of each. The Court addresses each avenue of proof.

## 1. Plaintiff has not presented direct evidence of discrimination.

Plaintiff points to various comments from managers that he claims are direct evidence of religious discrimination. Lowe's Home argues that none of the comments are from the individuals who ultimately terminated Plaintiff.

Plaintiff has not presented any direct evidence. Plaintiff cites various stray remarks from managers that he believes shows their animus towards him not working Sundays, but these individuals had no role in his termination. Moreover, these remarks have nothing to do with Plaintiff's alleged disability or age. It is undisputed that Ms. Kohler and Mr. Wester were solely responsible for the termination decision, and Plaintiff has cited no comments or other evidence from them that can remotely be construed as direct evidence. To the contrary, they have averred that they did not consider Plaintiff's religion, disability, or age in their decision to terminate him. So Plaintiff has presented no direct evidence of discrimination. *See Button*, 963 F.3d at 832.

## 2. Plaintiff has not presented sufficient circumstantial evidence to survive summary judgment.

Lowe's Home argues that Plaintiff has also failed to present sufficient circumstantial evidence to survive summary judgment under the *McDonnell Douglas* framework. In particular, it argues that Plaintiff has not satisfied the prima facie elements of his religious, age, and disability discrimination claims. And it argues that even if he had done so, Plaintiff's policy violation constituted legitimate, nondiscriminatory reasons for his termination. Plaintiff counters that he has presented sufficient evidence to establish the prima facie elements for these three claims, and he has shown that the alleged policy violations were pretextual.

Even assuming that Plaintiff could establish the prima facie elements of these claims, Lowe's Home has provided legitimate, nondiscriminatory reasons for his termination. Ms. Kohler and Mr. Wester terminated Plaintiff because he pushed a dryer off a platform and kicked

11

a safety harness.  This action violated Lowe's Workplace Safety Policy.  An employee's violation of workplace policy is a legitimate, nondiscriminatory reason supporting termination. *See McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006).

The burden, thus, shifts to Plaintiff to establish pretext.  This requires Plaintiff to "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *McNary*, 535 F.3d at 769 (quotation omitted); *see also Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) ("To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has proffered a phony excuse."). The avenues for proving pretext include demonstrating that the employer's explanation "has no basis in fact," that the employer "shifted its explanation," or that "the employer deviated from [its] policies." *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1017 (8th Cir. 2017). Pretext may also be shown by evidence that the employer treated "similarly situated employees who are not members of the protected class in a different manner." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

The Court is confined to deciding whether an "employer gave an honest explanation of its behavior, not whether its action was wise, fair, or correct." *McKay v. U.S. Dept. of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003).  This means that "it is not unlawful for a company to make employment decisions based upon erroneous information and evaluations." *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013).  The Court does not sit as "a super-personnel department with the power to second-guess employers' business decisions." *Id.*

Plaintiff has not presented evidence of pretext. Although he vaguely and briefly argues that Lowe's Home failed to follow its own policies, shifted its explanation, and treated similarly-situated employees differently, the only *evidence* he cites in support are a few purported examples of other delivery drivers who supposedly were not disciplined like he was. *See* Sugg'n in Opp'n at 49–51.[5] But the problem is that the employees he highlights are not "similarly situated [to him] in all relevant respects." *Canning v. Creighton Univ.*, 995 F.3d 603, 613–14 (8th Cir. 2021); *Kerr v. Curators of the Univ. of Mo.*, 512 S.W.3d 798, 807 (Mo. Ct. App. 2016). To be sure, several of the employees he cites were also delivery drivers and some of them appear to have engaged in *some* policy violations that were similar to his. But none of them dealt with the same decisionmakers—Ms. Kohler and Mr. Wester—that he did, none of them engaged in the same or similar actions that violated the workplace safety policy,[6] and none of them had also violated *other* work policies. *See, e.g.*, *Said v. Mayo Clinic*, 44 F.4th 1142, 1148–49 (8th Cir. 2022); *Maras v. Curators of Univ. of Mo.*, 983 F.3d 1023, 1029 (8th Cir. 2020); *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014); *Britton v. City of Poplar Bluff, Mo.*, 244 F.3d 994, 998 (8th Cir. 2001). And for several of the alleged comparators, Plaintiff has failed to show that they were not in the same protected groups as him. This does not establish pretext.

---

[5] In his statement of facts, Plaintiff also perfunctorily disputes that his actions of pushing the dryer off the platform and kicking his harness violated Lowe's Home's policies. But this does not create a triable issue because he has not shown that the decisionmakers did not honestly believe that his actions violated Lowe's policies. *See Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 934–35 (8th Cir. 2011) ("Clay's argument requires us to interpret an employer's policy, however, which we are generally reluctant to do."); *see also McKay*, 340 F.3d at 700.

[6] Plaintiff relies upon the testimony of Joseph Binney, a former delivery driver, to establish that others violated the safety policies but were not disciplined. But the cited testimony mostly consists of vague examples of alleged incidents Mr. Binney believed may constitute workplace safety violations. For some of the alleged incidents, Mr. Binney had merely heard about them, so his testimony was based on hearsay and speculation. And none of the incidents were the same or similar to Plaintiff's actions. Nor does his testimony establish who committed most of the alleged examples he provided or that any Lowe's Home supervisors—let alone the decisionmakers in this case— were aware of these alleged safety violations.

13

Since Plaintiff has not presented sufficient direct or circumstantial evidence of religious, age, or disability discrimination, Lowe's Home is entitled to summary judgment on these claims.

**B.      Lowe's Home is entitled to summary judgment on Plaintiff's harassment and hostile work environment claims.**

Lowe's Home argues that it is entitled to summary judgment on Plaintiff's harassment and hostile work environment claims because he has not shown that the alleged harassment was objectively severe and pervasive enough to survive summary judgment. Plaintiff counters that he has shown that the harassment was *subjectively* severe and pervasive, and whether it was objectively severe and pervasive is an issue for the jury.

The parties analyze the harassment and hostile work environment claims in unison and under the exact same law, so the Court does as well. To establish a prima facie case of hostile work environment or harassment, Plaintiff must show: "(1) [he] is a member of a protected class; (2) [he] was subjected to unwelcome…harassment; (3) [his religion] was a [motivating][7] factor in the harassment; and (4) the harassment affected a term, condition, or privilege of employment." *M.W. by and through K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 410 (Mo. Ct. App. 2020). The fourth element is at issue here. That element is satisfied when the harassment "creates an intimidating, hostile, or offensive work environment or results in a tangible adverse employment action." *Id.* "The standard for proving this fourth element is demanding." *Id.* (citing *Watson v. Heartland Health Labs., Inc.*, 790 F.3d 856, 861 (8th Cir. 2015)). To surmount this hurdle, Plaintiff must establish that the harassing conduct was "so intimidating, offensive, or hostile that it poisoned the work environment and that the workplace

---

[7] As is the case with the other causes of action, the motivating factor analysis applies to this claim because the lawsuit as well as the conduct at issue occurred after the effective date of the MHRA changing from a contributing to a motivating factor standard. *See R.M.A. by Appleberry v. Blue Springs R-IV School Dist.*, 568 S.W.3d 420, 425 n.3 (Mo. 2019) ("The applicable statute is typically the one in effect when the petition was filed.").

14

was permeated with discriminatory intimidation, ridicule, and insult." *Watson*, 790 F.3d at 861 (internal quotation marks and citations omitted).

The harassment must meet this standard "both as it was subjectively viewed by [Plaintiff] and as it would be objectively viewed by a reasonable person." *Id.* (internal quotation marks omitted). To decide whether an environment was sufficiently severe or pervasive enough to survive summary judgment, the Court analyzes "the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Id.* (internal quotation marks omitted). And contrary to Plaintiff's argument that simply showing that the environment was subjectively hostile is enough to survive summary judgment, Sugg'n in Opp'n at 52, courts routinely grant summary judgment where a plaintiff fails to prove that the environment was objectively hostile. *See, e.g.*, *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1083 (8th Cir. 2021) (interpreting MHRA); *Watson*, 790 F.3d at 861 (same); *M.W. by and through K.W.*, 605 S.W.3d at 411–13 (same); *Jamerison v. Anthem Ins. Cos., Inc.*, No. 4:20-CV-1640-MTS, 2022 WL 950861, at *8 (E.D. Mo. Mar. 30, 2022) (same).

The same is true here. Plaintiff points to a few offensive utterances about his need to work Sundays, but these comments were not severe or pervasive enough to meet this demanding standard. *See Henson*, 3 F.4th at 1083; *Watson*, 790 F.3d at 862–63; *see also Gilmore-Lee v. Vilsack*, No. 4:20-CV-00408-DGK, 2022 WL 16838902, at *9 (W.D. Mo. Nov. 9, 2022) (collecting cases). Likewise, without much elaboration or analysis, Plaintiff also claims that minor changes in his job duties meet this standard. But he has not shown those job changes were connected to his religion or rise to the level of a tangible employment action. *See Henson*, 3

15

F.4th at 1083 (alleged harassment was not shown to be connected to the protected category); *M.W. by and through K.W.*, 605 S.W.3d at 411 (plaintiff failed to show reassignment was a tangible adverse employment action). Finally, as noted above, Plaintiff has not shown that his religion motivated his termination.

Since Plaintiff has fallen short of establishing a hostile work environment, Lowe's Home is entitled to summary judgment on Plaintiff's harassment and hostile work environment claims.

C.   **Lowe's Home is entitled to summary judgment on Plaintiff's failure to accommodate claim.**

Lowe's Home argues that it is entitled to summary judgment on Plaintiff's failure to accommodate claim because it is untimely and because Lowe's Home accommodated his request of not working on Sundays. Without citing any case law, Plaintiff makes the factual argument that the later accommodation cannot rectify requiring him to work on Sundays previously.

To establish a submissible case of failure to accommodate a religious belief, Plaintiff must establish: "(1) a bona fide belief that compliance with an employer's requirement would be contrary to his or her religious belief; (2) the employer has been so notified; and (3) the employee was discharged for failing to comply with the requirement." *Sedalia No. 200 Sch. Dist. v. Mo. Comm'n on Human Rights*, 843 S.W.2d 928, 930 (Mo. Ct. App. 1992) (cleaned up); *see also Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). And "when the employer reasonably accommodates the employee's religious belief, the statutory inquiry ends." *Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1342 (8th Cir. 1995).

Plaintiff's claim fails for three reasons. First, Plaintiff has failed to properly contest summary judgment. Plaintiff filed a single-page, factual response that cites no caselaw to argue that his claim survives summary judgment. Plaintiff is offloading onto the Court his responsibility to conduct legal research, cite analogous cases, and explain why summary

16

judgment should be denied based on that law. But the Court will not conduct legal research and construct legal arguments for Plaintiff. *See Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 523 (8th Cir. 2020) ("Because the Trustees 'failed to provide meaningful legal analysis' explaining how the disputed facts supported their claim for unpaid contributions for Charps's employees, the claim could not survive the defendants' motion for summary judgment."); *United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) ("It is not this court's job to research the law to support an appellant's argument." (internal quotation marks and alterations omitted)); *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) ("It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel." (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).

Second, even assuming he had properly contested summary judgment, Plaintiff was granted a reasonable accommodation that did not require him to work on Sundays. And while his accommodation request was pending, he was only required to work one Sunday during the times when he was not in service. These are reasonable accommodations. *Wilson*, 58 F.3d at 1342; *see also Plaintiff v. Catalent Pharma Sols., LLC,* No. 19-00392-CV-W-ODS, 2020 WL 3105095, at *6 (W.D. Mo. June 11, 2020). In fact, Plaintiff does not even contest their reasonableness; he only argues that he should have been accommodated earlier.

Third, to the extent that Plaintiff was required to work some Sundays before he made a written accommodation request, he was not discharged or disciplined for failing to comply with the requirement. Indeed, Plaintiff cites no evidence that he ever missed a shift the few times he was scheduled to work on a Sunday or that he was disciplined for missing a Sunday shift. *See Jones*, 319 F.3d at 359; *Johnson v. Midcoast Aviation*, No. 4:06-CV-1805(CEJ), 2008 WL

3200801, at *7 (E.D. Mo. Aug. 6, 2008).   Moreover, although Plaintiff was eventually discharged from Lowe's Home, it was because of his policy violation and it occurred after he had already been given his requested accommodation.  *See Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir. 1977).  So Plaintiff cannot prove causation or harm stemming from his accommodation request.   Lowe's Home is thus entitled to summary judgment on this claim.

### D.   Lowe's Home is entitled to summary judgment on Plaintiff's retaliation claim.

Lowe's Home argues that it is entitled to summary judgment on Plaintiff's retaliation claim because he cannot satisfy the first and third prima facie elements of his claim.  In two short paragraphs, without specifically addressing Lowe's Home's lengthy arguments, Plaintiff claims he has presented sufficient evidence to survive summary judgment.

To present a submissible MHRA retaliation case, Plaintiff must show: "(1) [he] complained of an MHRA-prohibited activity, (2) [Lowe's Home] took an adverse employment action, and (3) a causal connection exists between the complaint and the adverse action." *Shirrell*, 793 F.3d at 886.  On the third element, "[s]ome examples for circumstantial evidence of causation include good work record prior to the adverse employment action, close temporal proximity between the complaint and adverse action, atypical treatment, and facts showing the employer's explanation for the action is unworthy of credence." *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. Ct. App. 2020).  But "a plaintiff generally must present *more than a temporal connection* between protected activity and an adverse employment action."  *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1036 (8th Cir. 2016) (internal quotation marks omitted) (emphasis in original).  Indeed, "[a]s more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).

18

Even assuming that Plaintiff can establish a protected activity, he has not presented sufficient evidence to establish the third element. Ms. Kohler and Mr. Wester terminated Plaintiff after he pushed a dryer off a platform and kicked his safety harness in violation of Lowe's policies. As noted above, these individuals made no comments or took any actions that would remotely suggest an animus towards Plaintiff's religion, request for accommodations, or any alleged complaints of religious discrimination. In fact, despite an extended discovery period, Plaintiff has presented absolutely no evidence that they were even aware of his religion, request for accommodations, or alleged complaints of religious discrimination. Nor has Plaintiff presented any evidence that they treated him atypically; indeed, there is no evidence that they had any interaction with Plaintiff outside the investigation for his policy violation and eventual termination. And the temporal proximity between his alleged protected activity and termination is weak. Plaintiff's alleged protected activity occurred at least six months before his termination, so this large gap in timing is not enough to survive summary judgment. *See Denn*, 816 F.3d 1037; *Shirrell*, 793 F.3d at 886; *see also Carmon v. Saks Fifth Ave., LLC*, No. 4:19-CV-02855-AGF, 2021 WL 1312976, at *18 (E.D. Mo. Apr. 8, 2021) (collecting Eighth Circuit cases with narrower gaps in time where the court found it insufficient to survive summary judgment).

Since Plaintiff has not shown that his alleged protected activity caused his termination, Lowe's Home is entitled to summary judgment on his retaliation claim.

## II. Lowe's Companies is entitled to summary judgment on all claims.

Lowe's Companies argues that it is entitled to summary judgment on all claims because it never employed Plaintiff. In support, Lowe's Companies cites Plaintiff's testimony that he was employed by Lowe's Home, and it cites Plaintiff's W-2s that show the same. Based on two unauthenticated LinkedIn profiles from Ms. Kohler and Mr. Wester as well as an unauthenticated

19

article from the internet about Ms. Kohler, Plaintiff argues that they were employees of Lowe's Companies. And since they fired him, Lowe's Companies was also his employer. In response, Lowe's Companies presents an affidavit from Mr. Wester that unequivocally states he and Ms. Kohler have never been employed by Lowe's Companies. It also argues that the cited documents cannot be considered by the Court, as they have not been authenticated.

To be liable under the MHRA, Lowe's Companies must be an "employer, employment agency, labor organization, or place of public accommodation." Mo. Rev. Stat. § 213.070.1. The parties only dispute whether Lowe's Companies is an "employer" as defined in the statute. This determination turns on the following factors: "(1) who was responsible for establishing policies and training employees concerning harassment; (2) who was responsible for receiving, investigating, and responding to harassment complaints; and (3) who had the power to discipline employees who may have failed to comply with anti-harassment policies." *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 80 (Mo. Ct. App. 2015).

Here, the only purported evidence that Lowe's Companies was Plaintiff's employer under this standard are the LinkedIn pages and what appears to be a website page from "Loss Prevention Magazine." The LinkedIn pages list Mr. Wester and Ms. Kohler's employer as "Lowe's Companies," and the webpage does the same for Ms. Kohler. These documents, however, cannot be considered by the Court. Plaintiff has not authenticated them or shown how they could be authenticated. *See Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1127 (8th Cir. 2017); *see also United States v. Lamm*, 5 F.4th 942, 948 (8th Cir. 2021). And even assuming they could be authenticated, they are hearsay because they are introduced to prove the truth of the matter asserted: that Mr. Wester and Ms. Kohler are employees of Lowe's Companies. *See* Fed. R. Evid. 801, 802. Once these documents are properly set aside, there is

no other evidence remotely suggesting that Lowe's Companies employed Plaintiff. Despite the opportunity for extensive discovery, Plaintiff has presented no documents from Lowe's Companies or deposition testimony from it, Mr. Wester, or Ms. Kohler that confirms they worked for Lowe's Companies. To the contrary, Mr. Wester has averred that neither he nor Ms. Kohler have ever worked for Lowe's Companies. So on this record, Plaintiff has not shown that Lowe's Companies is his employer. Thus, it is entitled to summary judgment on all claims.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date:  March 14, 2023                             /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT

21